UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE SHELLHAMMER,                    Case No. 11-13467

          Plaintiff,                 Julian Abele Cook
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 16)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On August 10, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Julian Abele Cook referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance and supplemental security income benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 11, 16).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on April 26, 2007, alleging that she became

unable to work on April 23, 2007.  (Dkt. 9-5, Pg ID 140-142, 148-150).  The claim

was initially disapproved by the Commissioner on July 13, 2007 (Dkt. 9-4, Pg ID

95-101) and upon reconsideration on December 13, 2007.  (Dkt. 9-4, Pg ID 106-

111).  Plaintiff requested a hearing and on August 11, 2009, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) Scott A. Tews, who

considered the case *de novo*.  In a decision dated November 20, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 28-45).  Plaintiff requested

a review of this decision on December 8, 2009.  (Dkt. 9-2, Pg ID 27).  The ALJ's

decision became the final decision of the Commissioner on June 13, 2011, when

the Appeals Council denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 23-

25); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 47 years of age at the time of the most recent administrative

hearing.  (Dkt. 9-2, Pg ID 43).  Plaintiff's relevant work history included

approximately 8 years as a day care attendant, office administrator, and

receptionist.  (Dkt. 96-, Pg ID 173).  In denying plaintiff's claims, defendant

Commissioner considered numbness in left arm/nerve damage in right arm/carpal

tunnel in right arm/torn tendons in right arm/depression/glaucoma/high cholesterol

as possible bases of disability.  (Dkt. 9-6, Pg ID 172).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

April 23, 2007.  (Dkt. 9-2, Pg ID 33).  At step two, the ALJ found that plaintiff's

post-cervical fusion, carpal tunnel syndrome, sleep apnea, history of diabetes,

history of glaucoma, history of asthma, and affective disorder with depression and

anxiety were "severe" within the meaning of the second sequential step.  *Id*.  At

step three, the ALJ found no evidence that plaintiff's combination of impairments

met or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID 24).  At step

four, the ALJ found that plaintiff could not perform her previous work as a clerical

worker.  (Dkt. 9-2, Pg ID 43).  At step five, the ALJ denied plaintiff benefits

because plaintiff could perform a significant number of jobs available in the

national economy.  (Dkt. 9-2, Pg ID 44).

> B.   Plaintiff's Claims of Error

Plaintiff says she was on SSI from age 16-37[1] for "mental problems which

she still has" and she is compromised in what she can do for herself.  She says she

---

[1] There is no evidence in the record to support this claim.

also now has medical problems that further inhibit her daily functions of life. And, she claims to have documents from the Florida Department of Vocational Rehabilitation that states she has problems with the dexterity of her left hand. She argues that she meets the standards for disability but was denied because her social security number was used illegally for employment and the ALJ thought she was "lying." Plaintiff filed another application for disability and apparently had a hearing on October 12, 2011 and it awaiting a decision. Plaintiff says she can also prove that her husband never worked in Las Vegas and that she can prove that she never visited him out there. She says her diagnosis of RSD came from an orthopedic surgeon, who should be believed over a pain management doctor.

### C.    The Commissioner's Motion for Summary Judgment

The ALJ found Plaintiff less than fully credible and, according to the Commissioner, was justified in doing so. The Commissioner points out that plaintiff's doctors repeatedly expressed skepticism about her complaints. In May 2007, one of plaintiff's doctors noted that her "subjective reaction to light touch and pain is significantly greater than the objective findings," which included a lack of sensory and motor deficits. (Tr. 229). Plaintiff's treating pain specialist, Dr. Weiner, was even more skeptical. He "just found it interesting that [Plaintiff] never complained of pain in her right elbow, right wrist, or right knee before now." (Tr. 265). Plaintiff also asked for a refill of Percocet 1 1/2 months early.

(Tr. 265).  The doctor remarked that plaintiff had been "working just fine," despite the presence of symptoms, "until she was given the diagnosis of RSD [reflex sympathetic dystrophy]."  (Tr. 266).  Dr. Weiner went on to state that plaintiff's "[b]ehaviors were exaggerated in context of disease on exam."  (Tr. 266).  He noted that when he first entered the room, plaintiff was guarding her right arm and would barely move it.  (Tr. 266-67).  However, when he returned, plaintiff was sitting in a tripod stance with no sign of pain.  (Tr. 267).  Plaintiff attempted to explain this away by claiming that her right arm was not bearing weight, but the doctor dismissed this explanation as inconsistent with his observation.  (Tr. 268).  Although Dr. Weiner noted severe tenderness in one area of the right arm and moderate tenderness in the right knee, he stated that in both cases the tenderness "seem[ed] exaggerated."  (Tr. 267).  In addition to other diagnoses, Dr. Weiner opined that plaintiff had psychosocioeconomic overlay and symptom magnification.  (Tr. 268).  On another visit, Dr. Weiner observed that plaintiff claimed that she had worn braces, but described them incorrectly and refused to try braces again.  (Tr. 274).  He also expressed skepticism about plaintiff's claim that she had a trial of non-steroidal anti-inflammatory drugs (NSAIDs).  (Tr. 274).  A state agency physician observed that plaintiff had shown exaggerated pain reaction, and possible drug-seeking behavior.  (Tr. 324).  Later drug tests also raised the possibility that plaintiff was diverting drugs.  A June 2009 note

Report and Recommendation
Cross-Motions for Summary Judgment
*Shellhammer v. Comm'r*; Case No. 11-13467

indicated that plaintiff's blood was positive for oxycodone but negative for oxymorphone, suggesting that plaintiff was not taking her Percocet as prescribed (Tr. 359-61). Also, Dr. Weiner noted exaggerated behavior on several other occasions. (Tr. 373, 386). If all this were not enough reason to discount what Plaintiff said, the ALJ also observed that she did not offer an explanation for the existence of income on her earnings record in 2008. (Tr. 11, 46-47).

According to the Commissioner, the ALJ's extremely strong credibility determination is alone substantial evidence to support his determination. But the ALJ also looked to the medical evidence to determine whether it was consistent with plaintiff's claims. The Commissioner contends that he reasonably determined that it was not. For example, in March 2007, plaintiff had a mostly normal musculoskeletal and neurological exam, with only a few abnormal findings. The doctor did report moderate tenderness in one area of the arm (Tr. 223), but given later reports of plaintiff exaggerating symptoms, the ALJ could look at this skeptically. Plaintiff's posture was altered due to straightening of the cervical spine (Tr. 223), but there is no evidence that this straightening caused any problems. Plaintiff had moderately restricted range of motion in her neck (Tr. 224), but according to the Commissioner, range of motion is dependent on the examinee's effort. Strength and tone were normal throughout. (Tr. 223-24). An EMG of the right upper extremity was normal (Tr. 228), and although plaintiff

claimed to have pain in her upper extremity during an examination, she was seen extending her arm without pain when observed. (Tr. 232). Plaintiff's knee condition was described as "mild." (Tr. 232). A right elbow MRI revealed only a small joint effusion. (Tr. 258). In June 2007, Dr. Weiner noted a normal musculoskeletal examination, except for tenderness that seemed exaggerated. (Tr. 267). Except for changes due to surgery, an MRI of the cervical spine was normal. (Tr. 268). Dr. Weiner expressed that plaintiff had none of the signs one would expect for RSD. (Tr. 269). And, while plaintiff had sleep apnea (Tr. 402), there is no evidence that CPAP therapy was ineffective for this condition.

According to the Commissioner, the ALJ's RFC finding is also consistent with most of the medical opinions in the record. The ALJ's RFC finding – light work with a restriction on overhead reaching – tracked the opinion of the state agency physician. (Tr. 325). A psychologist who reviewed the record in July 2007 believed plaintiff had only mild limitations (Tr. 285), but the Commissioner points out that plaintiff can hardly complain about the ALJ's choice to assign his opinion little weight. A second psychologist reviewed the record for the state agency in December 2007, and found mild-to-moderate deficits in detailed memory, sustained attention and persistence, accepting critical feedback, and adjusting to work changes. (Tr. 346). He concluded, however, that plaintiff could do simple tasks full-time. (Tr. 347). The ALJ went further than either state

agency psychologist, imposing not only a limitation to simple, routine, low-stress, repetitive tasks, but also limiting interaction with co-workers and the public.  (Tr. 16).

The only medical source statement that might support plaintiff's claim is a brief, unsupported form by Dr. Matthews-Ferrari.  The Commissioner points out that he used definitions that were apparently provided by plaintiff's counsel (as they do not exist in the regulations).  (Tr. 349).  Dr. Matthews-Ferrari identified Plaintiff as mildly or moderately limited in most areas, but indicated that she had three moderately severe limitations: in the ability to remember locations and work procedures, understand and remember detailed instructions, and carry out detailed instructions.  (Tr. 349).  According to the Commissioner, the ALJ's decision is consistent with two of the three limitations, since he found plaintiff could only do simple work.  Otherwise, the ALJ appropriately decided to give this conclusory, unsupported opinion little weight because it was inconsistent with the evidence as a whole and inconsistent with the doctor's own notes.  (Tr. 13-14).  In particular, those notes demonstrated that plaintiff improved significantly on medication.  (Tr. 14).

The Commissioner also contends that the other evidence readily supports the ALJ's interpretation.  A consultative examiner assigned plaintiff a GAF score of 60 (Tr. 248), on the border between moderate symptoms/impairment and mild

symptoms/impairment.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).  Although plaintiff had some issues with persistence, her social skills, understanding, and memory were unexceptional.  (Tr. 248).  Based largely on the consultative examination, a state agency psychologist found that plaintiff had only mild impairments.  (Tr. 285). When plaintiff saw Dr. Matthews-Ferrari for the first time in August 2007, he documented a mostly normal mental status examination, with the only abnormalities being some impairment in attention, fair judgment and insight, and a "bouncy" mood.  (Tr. 292).  At the time of this examination, plaintiff had been on Lexapro but had not taken any in two weeks (Tr. 289), so Dr. Matthews-Ferrari told her to start taking Lexapro again.  (Tr. 295).  In November 2007, plaintiff was "doing well,"and the doctor reported a completely normal mental status examination.  (Tr. 358).  The Commissioner points out that Dr. Matthews-Ferrari filled out his opinion form just after this office visit and the contrast between the opinion form and the clinical notes is striking.  Moreover, a February 2008 note indicated that plaintiff had achieved significant improvement as "the Lexapro works so good & no [side effects]."  (Tr. 354).  Plaintiff apparently agreed, as she never went back to see Dr. Matthews-Ferrari and was discharged from his practice six months later.  (Tr. 351).  According to the Commissioner, the ALJ reasonably determined that Dr. Matthews-Ferrari's opinion was inconsistent with his own

Report and Recommendation
Cross-Motions for Summary Judgment
*Shellhammer v. Comm'r*; Case No. 11-13467

notes and with the record as a whole, as well as with plaintiff's significant improvement on Lexapro and her subsequent decision to discontinue visits with the doctor.

## III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

        If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,
20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner
makes a dispositive finding at any point in the five-step process, the review
terminates."  *Colvin*, 475 F.3d at 730.

 "Through step four, the claimant bears the burden of proving the existence
and severity of limitations caused by her impairments and the fact that she is
precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited
with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step
without a finding that the claimant is not disabled, the burden transfers to the
Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

 If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.
*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

Plaintiff's objections essentially attack the credibility analysis performed by the ALJ.  Notably, an ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Cruze v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (stating that an "an ALJ's credibility determinations about the claimant are to be given great weight").  The ALJ, in commenting on plaintiff's credibility as it relates to pain symptoms, must follow the requirements of, among other provisions, 20 C.F.R. §404.1529 as well as SSR 96-7p, which provides, in part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ thoroughly discussed the appropriate factors in assessing the impact of plaintiff's pain complaints on her ability to function and her credibility generally. And, the ALJ reasonably concluded that plaintiff's pain and other symptoms did not preclude her from performing any work. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). The ALJ's decision to give plaintiff's testimony less than full credit is well-supported by the record. As the Commissioner points, plaintiff's own treating physicians viewed many of her complaints skeptically. In addition, plaintiff did not pursue any more aggressive

treatment even though such options were offered and she was apparently satisfied with her pain medication regimen.  The undersigned concludes it was entirely appropriate for the ALJ to rely on the conservative nature of treatment of plaintiff's pain complaints in assessing the extent of impairment and his credibility.  *See e.g.*, *Struchen v. Astrue*, 2010 WL 3259895, *4 (N.D. Ohio 2010); *Patrick v. Astrue*, 2010 WL 235032, *6 (E.D. Ky. 2010); *Ealy v. SSA*, 172 Fed.Appx. 88 (6th Cir. 2006) (*per curiam*) (upholding ALJ's determination that claimant's "claimed limitations 'were not fully credible' because they were 'inconsistent with ... the lack of more aggressive treatment ... and the claimant's ordinary activities.'").  There is also evidence that plaintiff was not taking her pain medication as prescribed - that is, she was taking *less* than prescribed, suggesting that her symptoms were not as severe as she claimed.  Additionally, the record is devoid of any exertional restrictions imposed by any treating physician. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  Plaintiff also contends that she can "prove" that the 2008 earnings were not hers and the ALJ should not have held this against her.  However, plaintiff (who was represented by an attorney at the hearing) did not do anything to provide further information to the ALJ regarding this discrepancy in claimed earnings.  Thus, the ALJ's use of

this in the credibility determination was appropriate and entitled to deference.

Plaintiff seems focused on her diagnosis of RSD and suggests that the ALJ should have accepted the opinion of an orthopedic surgeon over a pain management physician.  Plaintiff, however, misses the point.  Whether she has RSD or some other diagnosis is appropriate is not controlling.  Rather, her ability to function is the key inquiry.  And, simply because plaintiff suffers from a certain condition or carries a certain diagnoses does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability before the last date

insured.

Finally, as to plaintiff's mental impairments, the ALJ's assessment is fully supported by the record evidence.  Her treating physician's opinions were properly given less than controlling weight because they were not supported by the treatment notes or plaintiff's treatment history.  The evidence showed that plaintiff's symptoms were well-controlled by a low dose of Lexipro and her treatment was quite conservative.  For these reasons, the undersigned finds no basis to disturb the ALJ's conclusions regarding plaintiff's mental impairments.

As set forth above, an ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, and the undersigned finds no basis to disturb the ALJ's credibility findings, or any other findings made by the ALJ.

## IV.   RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

Report and Recommendation
Cross-Motions for Summary Judgment
*Shellhammer v. Comm'r*; Case No. 11-13467

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 21, 2012                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Shellhammer v. Comm'r*; Case No. 11-13467

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 21, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Andrew J. Lievense, AUSA, and the Commissioner of Social Security</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: <u>Christine Shellhammer, 302 Oak Lane, Flint, MI 48506</u>.

<div style="margin-left: 40%;">

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

</div>